T.C. Summary Opinion 2004-27

UNITED STATES TAX COURT

TYRONE SHARP AND ALVERA SHARP, a.k.a. ALVERA CROCKETT,
Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18491-02S.          Filed March 11, 2004.

Tyrone Sharp, pro se.

Lorianne D. Masano, for respondent.

CARLUZZO, Special Trial Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the taxable years in issue.  Rule references are to the Tax Court Rules of Practice and Procedure.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined deficiencies in petitioners' Federal income taxes, an addition to tax, and penalties as follows:

| Petitioner(s) | Year | Deficiency | Sec. 6651(a)(1) | Sec. 6662(a) |
|---|---|---|---|---|
| Tyrone Sharp | 1999 | $5,344 | --- | $1,068.80 |
| Alvera Sharp | 1999 | 1,178 | --- | 235.60 |
| Tyrone & Alvera Sharp | 2000 | 4,012 | $703 | 802.40 |

After concessions, the following issues remain for consideration: (1) Whether Social Security disability benefits received in 1999 by Tyrone Sharp (petitioner) are includable in his income for that year; (2) whether petitioner is entitled to an alimony deduction for 1999 for certain payments made during that year to, or on behalf of, his former spouse; and (3) whether petitioner is liable for a section 6662(a) accuracy-related penalty for 1999.

Some of the facts have been stipulated and are so found. At the time the petition was filed, petitioners resided in Inverness, Florida.

Petitioner and Margaret Sharp (petitioner's former spouse) married in 1994 and divorced in 1999. They entered into a Joint Stipulation and Settlement Agreement (settlement agreement) with the Circuit Court of the Fifth Judicial Circuit In and For Citrus County, Florida, on September 20, 1999. Relevant for our purposes, the settlement agreement contains the following provisions:

2.    <u>Lump Sum Alimony</u>.  Having regard for their circumstances including, but not limited to, (a) the needs of the Wife for support, (b) the ability of the Husband to pay this support, the parties agree that in full and final settlement and satisfaction of any and all claims and rights of the Wife for support, maintenance, the Husband will pay to the Wife as non-modifiable lump sum alimony the lump sum of $7,260.00 payable in eleven (11) monthly installments of $660.00 per month until the sum is paid in full.  These Lump Sum Alimony payments shall commence on October 1, 1999 and continue on the 1st of each and every month thereafter until paid in full.  The Husband further agrees that upon the refinancing of the marital residence he will make an additional lump sum alimony payment of $20,000.00 to the Wife.

*      *      *      *      *      *      *

4.    <u>Health Insurance</u>.  The Husband agrees to continue to pay the Wife's health insurance premium until August 1, 2000.   Should the premium increase above the current rate of $133.00 per month, then the Wife agrees to be responsible for the amount of such increase.

5.    <u>Debts and Obligations</u>. * * * The Husband further agrees to be responsible for the SBA loan which is in the Wife's name until September 1, 2000.  The Husband shall make all regular payments on the SBA loan until September 1, 2000. * * *

*      *      *      *      *      *      *

7.    <u>Automobiles</u>. * * * The parties agree that the Wife shall retain the 1997 Toyota Camary.  The parties agree that the Husband shall continue to make the monthly lease payments until and including August, 2000.  The Wife shall be responsible for all other expenses in relation to such automobile, and shall assume responsibility for any and all lease payments or fees commencing September 1, 2000.

In accordance with the settlement agreement, during the last 3 months of 1999 petitioner made the following payments directly to, or on behalf of, his former spouse: (1) $660 per month as lump-sum alimony; (2) $299 per month for her car lease; (3) $112 per month for her SBA loan; and (4) $133 per month for her health insurance.

During 1999, petitioner received Social Security disability benefits in the amount of $13,512. Although paid entirely during 1999, these benefits are attributable to 1997, 1998, and 1999.

Petitioner married Alvera Sharp (Mrs. Sharp) in 1999. Although married to Mrs. Sharp as of the close of 1999, petitioner and his former spouse filed a joint 1999 Federal income tax return. They reported adjusted gross income of $23,159 on that 1999 return. The adjusted gross income reported on petitioner's 1999 return does not take into account the Social Security disability benefits he received that year.

In the notice of deficiency, respondent changed petitioner's filing status for 1999 from married filing a joint return, to married filing a separate return. As a result, respondent determined that 85 percent of the Social Security disability benefits ($11,485) received by petitioner during 1999 is includable in income for that year.

Discussion[1]

A.   Social Security Benefits

Section 61(a) provides that, except as otherwise provided by law, gross income includes all income from whatever source derived.   Relevant for our purposes, section 86(a) provides that if the taxpayer's modified adjusted gross income[2] plus one-half of the Social Security benefits received by the taxpayer exceeds the adjusted base amount, then gross income includes the lesser of:   (1) The sum of (a) 85 percent of such excess, plus (b) the lesser of (i) one-half of the Social Security benefits received during the year or (ii) one-half of the difference between the adjusted base amount and the base amount of the taxpayer; or (2) 85 percent of the Social Security benefits received during the taxable year.[3]   See sec. 86(a)(2).   With respect to a married taxpayer who does not file a joint return and who does not live apart from his spouse at all times during the taxable year, both

---

[1]   Because there are no disputes with respect to any factual issues in this case, we need not consider the application of sec. 7491(a).   Higbee v. Commissioner, 116 T.C. 438 (2001).

[2]   In this case, ignoring adjustments not relevant here, petitioner's modified adjusted gross income equals his adjusted gross income.   See sec. 86(b)(2).

[3]   Prior to 1984, certain disability benefits were excludable from an employee's gross income under section 105. However, this section was repealed, and "since 1984 Social Security disability benefits have been treated in the same manner as other Social Security benefits."   Maki v. Commissioner, T.C. Memo. 1996-209.

the base amount and the adjusted base amount are zero.  Sec. 86(c)(1)(C) and (2)(C).

Social Security benefits are included in the recipient's gross income in the taxable year in which the benefits are received.  Sec. 86(a)(1).  An election may be made by taxpayers who receive lump-sum payments of Social Security benefits during the taxable year in which a portion of the benefits is attributable to previous taxable years.  Sec. 86(e).  Section 86(e) provides that, if the election is made, the amount included in gross income for the taxable year of receipt must not exceed the sum of the increases in gross income for those previous taxable years that would result from taking into account the portion of the benefits attributable to the previous taxable years.  Accordingly, if no election is made by the taxpayer under section 86(e), lump-sum distributions of Social Security benefits are includable in the taxpayer's gross income in the taxable year the benefits are received.

Petitioner did not make an election under section 86(e) with respect to the lump-sum Social Security disability benefits received in 1999.  He concedes that his proper filing status for the 1999 taxable year is married filing separately.  Furthermore, he does not claim that he lived apart from Mrs. Sharp after their marriage in 1999, and nothing in the record suggests that he did.

Accordingly, petitioner's base amount and adjusted base amount for purposes of the section 86 calculation are zero. See sec. 86(c)(1)(C) and (2)(C).

Taking into account petitioner's 1999 filing status, his 1999 modified adjusted gross income, and the Social Security benefits he received that year, 85 percent of those benefits are includable in his 1999 income. See sec. 86(a), (c). Respondent's determination in this regard is, therefore, sustained.

B. <u>Alimony Deduction</u>

At trial, petitioner claimed an alimony deduction for the lump-sum alimony payments made to his former spouse and the payments made on her behalf as required by the terms of the settlement agreement.[4] Respondent contends that the payments made by petitioner pursuant to the terms of the settlement agreement are not alimony within the meaning of section 71, and, thus, petitioner is not entitled to an alimony deduction under section 215.[5]

---

[4] Petitioner erroneously filed a 1999 joint return with his former spouse. As filed, it would have made little sense to claim an alimony deduction on that return. The alimony deduction issue raised at trial was tried by express consent. See Rule 41(b).

[5] Respondent now concedes that the payments made by petitioner for his former spouse's health insurance premiums meet the definition of alimony under sec. 71 and are deductible by petitioner under sec. 215.

Section 215(a) allows an individual a deduction for alimony paid during the taxable year. In general, a payment constitutes alimony within the meaning of section 215 if the payment is made in cash and meets the following four criteria: (1) Such payment is received by (or on behalf of) a spouse under a divorce or separation instrument, (2) the divorce or separation instrument does not designate such payment as a payment which is not includable in gross income under this section and not allowable as a deduction under section 215, (3) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and (4) there is no liability to make any such payment for any period after the death of the payee spouse, and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse. Secs. 71(b)(1), 215(b).

Respondent agrees that the payments made by petitioner under the terms of the settlement agreement satisfy the first three requirements of section 71(b)(1): (1) The payments were made pursuant to a divorce decree; (2) the divorce decree did not designate the payments as ones that are excluded from treatment as alimony under section 71 and section 215; and (3) petitioner

and his former spouse were legally separated and not members of the same household at the time the payments were made. Respondent contends that the payments made by petitioner under the terms of the separation agreement do not terminate in the event of his former spouse's death.

In 1986, Congress removed the requirement from section 71(b)(1)(D) that a divorce or separation agreement specifically state that liability terminates upon the death of the payee spouse. See Tax Reform Act of 1986, Pub. L. 99-514, sec. 1843(b), 100 Stat. 2853. Thus, payments now qualify as alimony as long as termination would occur automatically under State law. See Human v. Commissioner, T.C. Memo. 1998-106.

Since the settlement agreement does not expressly address petitioner's liability to make the payments in the event of his former spouse's death, we look to Florida law to determine his liability in that regard. Sampson v. Commissioner, 81 T.C. 614, 618 (1983), affd. per curiam without published opinion 829 F.2d 39 (6th Cir. 1987).

Florida law recognizes alimony as either periodic or lump sum. Fla. Stat. Ann. sec. 61.08 (West 1999); Canakaris v. Canakaris, 382 So. 2d 1197, 1200 (Fla. 1980). "Lump sum alimony" is "a fixed and certain amount, the right to which is vested in the recipient and which is not therefore subject to increase, reduction, or termination in the event of any contingency,

specifically including those of death or remarriage." <u>Boyd v. Boyd</u>, 478 So. 2d 356, 357 (Fla. Dist. Ct. App. 1985); see also <u>Canakaris v. Canakaris</u>, <u>supra</u> at 1201 ("Although the award of lump sum alimony is not dependent upon a finding of a prior vested right, there does arise upon the entry of a final judgment of a lump sum award a vested right which is neither terminable upon a spouse's remarriage or death nor subject to modification.").

In the present case, the settlement agreement required petitioner to pay his former spouse lump-sum alimony in eleven installments of $660. The settlement agreement further provided that petitioner pay his former spouse's automobile lease payments and SBA loan payments until September 1, 2000. The number of payments and the amount of each payment were fixed and certain. Thus, the payments under the settlement agreement were not subject to modification or termination in the event of any contingency. Since these payments meet the requirements for lump-sum alimony set forth in <u>Canakaris v. Canakaris</u>, <u>supra</u>, and <u>Boyd v. Boyd</u>, <u>supra</u>, it follows that they would have remained payable to the former spouse's estate in the event of her death. See <u>Human v. Commissioner</u>, <u>supra</u>.

Accordingly, we hold that the lump-sum alimony payments, automobile lease payments, and SBA loan payments made by petitioner under the terms of the settlement agreement are not

alimony within the meaning of section 71.  Consequently, they are not deductible to petitioner pursuant to section 215(a).

C.  Section 6662(a) Penalty

Under section 6662, a penalty is imposed on that portion of an underpayment of the tax required to be shown on a return if the underpayment is due to negligence or disregard of rules or regulations.  Sec. 6662(a) and (b)(1).  Negligence is defined to include any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code.  Sec. 6662(c).  It is further defined as the failure to do what a reasonable person with ordinary prudence would do under the same or similar circumstances.  Neely v. Commissioner, 85 T.C. 934, 947 (1985). Disregard is defined to include any careless, reckless, or intentional disregard.  Sec. 6662(c).  An accuracy-related penalty will not be imposed with respect to any portion of an underpayment as to which the taxpayer acted with reasonable cause and in good faith.  Sec. 6664(c)(1).  Whether the taxpayer acted with reasonable cause and in good faith depends on the pertinent facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs. Circumstances that may indicate reasonable cause and good faith include the extent of the taxpayer's effort to properly assess the tax liability and an honest misunderstanding of fact or law that is reasonable in light of the taxpayer's experience, knowledge, and education.  Id.  The taxpayer bears the burden of

proving that he or she did not act negligently or disregard rules or regulations.  Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

Respondent supports the imposition of the section 6662(a) accuracy-related penalty entirely on petitioner's failure to include the Social Security disability benefits in his 1999 income.

We are satisfied that petitioner made a good faith effort to properly determine his 1999 Federal income tax liability, and his failure to properly account for his Social Security disability benefits results from an honest misunderstanding of fact or law that is reasonable in light of the his experience, knowledge, and education.  Accordingly, we hold that petitioner is not liable for the section 6662(a) accuracy-related penalty for his 1999 tax year.

Reviewed and adopted as the report of the Small Tax Division.

To reflect the foregoing,

<u>Decision will be</u>

<u>entered under Rule 155</u>.